UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No: 12-99-M |
| | ) | |
| ULICSSYE TOWNS, | ) | |
| | ) | |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

Before the Court is a Motion to Suppress (ECF No. 11) filed by the Defendant, Mr. Ulicssye Towns. Mr. Towns alleges that a warrantless search of his 1997 black Toyota Camry ("Camry") violated his constitutional rights under the Fourth Amendment and requests this Court exclude the evidence seized by federal and local investigators during that search. The Court held an evidentiary hearing on November 14, 2012 at which ATF Special Agent Edward Troiano testified and 21 exhibits were admitted into evidence. The Court also heard arguments from counsel at that time and received post-hearing supplemental briefing from both the government and Mr. Towns. For the following reasons, the Motion to Suppress is DENIED.

I. FACTS

On April 25, 2012, the Court authorized a warrant to search an apartment at 145 Pearl Street ("Apartment") after agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), in conjunction with officers of the Providence Police Department (collectively "Agents") engaged in nine controlled purchases of cocaine base from Mr. Towns[1]. The affidavit in support of the search warrant detailed Mr. Towns' travels to and from that Apartment prior to

---

[1] The government later engaged Mr. Towns in a tenth and final controlled purchase.

meeting a confidential informant ("CI") and selling the CI cocaine base. The affidavit further stated that Mr. Towns' mother resided at the Apartment and that Mr. Towns had been seen entering and exiting the apartment at various hours of the day and night, and that he regularly spent evenings there.

On May 2, 2012, preparing to execute the search of the Apartment, the Agents took up positions in the area of 145 Pearl Street. At approximately 3:50 p.m., the Agents saw Mr. Towns pass their locations in the Camry. In an unmarked police car, the agents followed Mr. Towns.

Mr. Towns pulled into a parking area approximately one or two blocks from 145 Pearl Street. As he pulled in, the Agents pulled their car behind the Camry, blocking it in. The Agents identified themselves, asked Mr. Towns to step out of the Camry, and detained him. They handcuffed him and put him in the back seat of a police vehicle. Special Agent Troiano advised Mr. Towns of his constitutional rights and asked Mr. Towns questions concerning the contents of the Apartment, as well as the contents of the Camry. Special Agent Troiano also advised Mr. Towns that law enforcement had a warrant to search the Apartment.

While Mr. Towns was out of the Camry and detained in the back of the police vehicle, Special Agent Eric Yankee entered the front seat of the Camry and observed that the emergency brake lever was in an up and engaged position. A housing with an opening that allowed for movement surrounded the brake lever.

Through the opening in the housing, Special Agent Yankee was able to observe, a crumpled paper towel and a clear plastic bag containing material consistent in appearance with cocaine base. Special Agent Yankee observed the contents of the plastic bag without opening the housing and without handling the paper towel or plastic bag. No more than 10 minutes had

elapsed from the time Agents stopped Mr. Towns to the time that Special Agent Yankee observed the bag of suspected cocaine base.

No search warrant was obtained prior to the time that Special Agent Yankee entered the Camry and observed and then removed the plastic bag.[2] Mr. Towns was subsequently transported to the Providence Police Department. The substance found in the Camry later tested positive for crack cocaine and weighed approximately 19 grams. In the subsequent search of the Apartment pursuant to the search warrant, about 15 grams of crack cocaine was also found.

## II. DISCUSSION

Mr. Towns moves to suppress the evidence seized during the warrantless search of the Camry. Mr. Towns alleges the evidence was acquired as a "result of government action in violation of the Fourth Amendment of the United States Constitution." (ECF No. 11 at 1.) Mr. Towns attacks the constitutionality of the search premised on his being "in handcuffs, and out of the immediate vicinity of the Camry" at the time of the search. (ECF No. 11-1 at 3.) Mr. Towns points to U.S. Supreme Court precedent to support his argument, specifically highlighting *Arizona v. Gant*, 556 U.S. 332 (2009), which held "Police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest." *Id.* at 332. Asserting that Mr. Towns was unable to access the Camry because he was handcuffed and detained in the back of the police vehicle, Mr. Towns moves this Court to suppress the evidence as the product of an unconstitutional warrantless search.

In response, the government bases the constitutionality of the warrantless search of the Camry on three different grounds: (1) a probable cause search of a vehicle under the automobile

---

[2] The government alleges that field testing confirmed that the bag contained cocaine base.

exception, (2) as a search incident-to-arrest under *Gant*, and (3) as a security sweep under *Michigan v. Long*, 463 U.S. 1032 (1983). (ECF No. 13 at 1.) Because this Court finds the government's search constitutional as a probable cause search pursuant to the automobile exception, it does not reach an analysis of the constitutionality of this search as a search incident-to-arrest pursuant to *Gant*, or as a security sweep under *Long*.

Our courts have held that while "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment" *Katz v. United States*, 389 U.S. 347, 357 (1967) there are "a great many" exceptions to the rule. *United States v. Goncalves*, 642 F.3d 245, 249 (1st Cir. 2011). Among the many exceptions to the rule exists the "automobile exception" first established in *Carroll v. United States*, 267 U.S. 132, 153 (1925). This exception "applies only to searches of vehicles that are supported by probable cause" and renders a warrantless search of an automobile not unreasonable "if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *United States v. Ross*, 456 U.S. 798, 809 (1982); *see also United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011) (holding that where there is probable cause to believe a vehicle contains evidence of criminal activity, agents can search without a warrant any area of the vehicle in which the evidence may be found.)

Additionally, "the existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle lawfully stopped in transit or parked in a public place, whether or not exigent circumstances prevailed at either the time of the seizure or the time of the search." *United States v. Panitz*, 907 F.2d 1267, 1272 (1st Cir. 1990). Lastly, probable cause exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence [to believe] that contraband or evidence of a crime will be found." *Ornelas v. United*

*States*, 517 U.S. 690, 696 (1996); *see also United States v. Woodbury*, 511 F.3d 93, 98 (1st Cir. 2007) (holding that a finding of probable cause does not require a "more likely true than false" showing).

Mr. Towns argues there was no probable cause that evidence of a crime would be found within his automobile because the evidence indicates that an alleged "stash house" located at the Apartment serves as the exclusive harbor of Mr. Towns' contraband. (ECF No. 20 at 3-4.) The government rebuts Mr. Towns' theory by highlighting specific facts arising from the ten controlled buys between Mr. Towns and the CI that points to evidence of a crime likely to be found in the Camry. These facts include: Mr. Towns used the Camry to bring cocaine base to the CI during five of the ten controlled purchases and that, Mr. Towns did not stop at the alleged "stash house" prior to executing three out of the ten controlled purchases.

Mr. Towns had a regular pattern of transporting illegal drugs in his Camry many times in connection with visits to and from the Apartment. His Camry was tied to his narcotics distribution on at least 5 occasions. These facts were well known to the Agents. This evidence in these circumstances is sufficient to warrant a reasonable person to believe that illegal drugs would be found in the Camry when it was near the Apartment at that time.

Therefore, in accordance with the precedent established *Ornelas*, this Court finds that the government has met its burden to present facts and circumstances that would lead a reasonable person to believe a search of Mr. Towns' automobile would yield contraband or evidence of a crime. Consequently, this Court finds the Agents' search of Mr. Towns' automobile was properly founded upon probable cause and thereby constitutional.

Accordingly, because this Court finds that the Agents had sufficient probable cause to search Mr. Towns' Camry, this Court concludes that the search of Mr. Towns' automobile was constitutional and therefore DENIES Mr. Towns' Motion to Suppress (ECF No. 11) the evidence seized therein.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge
January 18, 2013